United States District Court
Southern District of Texas
**ENTERED**
January 27, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHESTER SIMON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:19-CV-3357** |
| | § | |
| **ANDREW SAUL, Commissioner of Social** | § | |
| **Security,** | § | |
| | § | |
| **Defendant.** | | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Plaintiff Chester Simon's ("Plaintiff") Motion for Summary Judgment (Dkt. No. 12) and Defendant Andrew Saul's ("Commissioner") Motion for Summary Judgment (Dkt. Nos. 13–14). The Court has considered the motions, all other relevant filings, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and the action be **DISMISSED** with prejudice.

## I.   BACKGROUND

On August 29, 2019, Plaintiff timely filed this action for judicial review of the Social Security Administration's ("SSA") final decision on Plaintiff's claim for disability insurance benefits under Title II and XVI of the Social Security Act.[2] On April 5, 2016, Plaintiff filed an application for benefits claiming an inability to work since November 20, 2012, however, due to a

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (*See* Dkt. No. 16.)

[2] *See* Dkt. No. 1.

prior application and denial of benefits, Plaintiff cannot claim disability for any time prior to February 12, 2015.[3] Plaintiff claimed his inability to work was due to three herniated discs, hypertension, high cholesterol, erectile dysfunction, left hip contusion, lumbar radiculitis, left hip sprain and strain, lumbar sprain and strain, HNP of lumbar spine, and multiple herniated discs in spine.[4] The SSA found Plaintiff was not disabled at the initial level of review in August 2016 and again, upon reconsideration, in October 2016.[5] Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[6]

On May 25, 2018, the ALJ conducted a hearing.[7] The ALJ heard testimony from Plaintiff and Herman Litt, a vocational expert ("VE"). On August 24, 2018, the ALJ issued a decision denying Plaintiff's applications for disability benefits.[8] The ALJ found, "[t]he claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2015, through the date of this decision . . . ."[9] Plaintiff appealed the ALJ's decision to the SSA's Appeals Council.[10] On July 1, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision.[11]

The ALJ's decision represents the Commissioner's final decision in Plaintiff's case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). Following

---

[3] *See* Dkt. No. 10-3 at 14–15.
[4] Dkt. No. 10-4 at 2–3.
[5] *See* Dkt. No. 10-5 at 5, 14.
[6] *See id.* at 26.
[7] Dkt. No. 10-3 at 33–86.
[8] *Id.* at 11–26.
[9] *Id.* at 26.
[10] Dkt. No. 10-5 at 75–78.
[11] Dkt. No. 10-3 at 2.

the Appeals Council's denial, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g).[12]

## II.   LEGAL STANDARD

The Court's review of the Commissioner's final decision on a social security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the

---

[12] Dkt. No. 1.

Commissioner's findings. *Singletary*, 798 F.2d at 823. In its analysis, the Court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

Summary judgment in social security cases, like others, is governed by Rule 56. *See Temple v. Saul*, No. 19-CV-3320, 2020 WL 6075644, at *2 (S.D. Tex. Oct. 14, 2020). Under Rule 56, summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When parties file cross-motions for summary judgment, [courts] review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

## III.    DISCUSSION

"A claimant bears the burden of proving that he or she suffers from a disability." *Perez*, 415 F.3d at 461. The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity means "work activity involving significant physical or mental abilities for pay or profit." *Perez*, 415 F.3d at 461 (quoting *Newton*, 209 F.3d at 452).

In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520). While the claimant maintains the burden of proof for the first four steps, the burden shifts to "the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Perez*, 415 F.3d at 461. "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton*, 209 F.3d at 453) (internal quotations omitted).

"A finding that a claimant is disabled . . . at any point in the five-step review is conclusive and terminates the analysis." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). However, if no such finding can be made at any one step, the Commissioner moves on to the next step. 20 C.F.R. § 404.1520(a). Before moving from step three to step four, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is "a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The Commissioner uses the claimant's RFC at steps four and five to determine if the claimant can still do his past relevant work and determine whether the claimant can adjust to any other type of work. *Id.* (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ addressed all five steps of the sequential process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 12, 2015, the

established onset date per the previous ALJ decision.[13] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, depression, and diabetes.[14] At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[15] The ALJ found Plaintiff had the RFC to perform the exertional demands of light work as defined in the Commissioner's regulations.[16] At step four, the ALJ determined that Plaintiff could not perform any past relevant work.[17] At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed—such as case aide, companion, and nursery attendant—and therefore, Plaintiff was not disabled as defined under the Social Security Act.[18]

Plaintiff moves to reverse or remand the ALJ's decision based on four issues.[19] Plaintiff argues that: (1) the ALJ erred in failing to find Plaintiff's glaucoma and carpal tunnel syndrome as "severe" impairments; (2) the ALJ's RFC conflicted with the finding that Plaintiff has moderate difficulties with concentrating, persisting, or maintaining pace; (3) the ALJ erred by not setting weather and climate exposure limitations; and (4) the ALJ did not consider all required factors when assigning weight and erred by assigning more weight to certain opinions.[20]

Conversely, Commissioner argues that the ALJ's decision is supported by substantial

---

[13] Dkt. No. 10-3 at 17.
[14] *Id.*
[15] *Id.* at 18.
[16] *Id.* at 19–20.
[17] *Id.* at 24.
[18] *Id.* at 25–26.
[19] Dkt. No. 12 at 1.
[20] *Id.*

evidence and should be upheld because: (1) the ALJ properly considered Plaintiff's impairment allegations; (2) the ALJ properly accounted for Plaintiff's moderate deficiencies in his RFC findings and hypothetical questioning to the VE; (3) the ALJ did not err in not providing RFC limitations for weather and climate exposure; and (4) the ALJ properly weighed and considered the medical opinions.[21]

### a.  The ALJ's Step Two Findings Are Supported By Substantial Evidence.

Plaintiff argues that the ALJ erred by failing to find Plaintiff's glaucoma and carpal tunnel syndrome were "severe" impairments.[22] Commissioner contends that the medical evidence supports the ALJ's findings as to Plaintiff's glaucoma and carpal tunnel syndrome.[23] The Court agrees with Commissioner.

A severe impairment is more than a slight abnormality that would not be expected to interfere with a plaintiff's ability to work. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)) (stating that "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience"); *see Juarez v. Colvin,* No. CV H-15-1736, 2016 WL 7369128, at *17 (S.D. Tex. Nov. 30, 2016), report and recommendation adopted, No. CV H-15-1736, 2016 WL 7337974 (S.D. Tex. Dec. 19, 2016).

### i.  Glaucoma

As to Plaintiff's glaucoma, the ALJ's nonseverity finding is supported by substantial

---

[21] *See* Dkt. No. 14 at 4, 6, 8–9.
[22] Dkt. No. 12 at 3.
[23] Dkt. No. 14 at 5–6.

evidence. A June 2016 eye exam noted Plaintiff was "glaucoma suspect" with the recommendation to "[m]onitor routinely," but Plaintiff was not given eye drops at the time.[24] Later, a March 2017 and January 2018 eye exam again noted Plaintiff as "glaucoma suspect" and prescribed eye drops for treatment.[25] As Commissioner identified, Plaintiff is still able to drive himself and watch television.[26]

Conversely, Plaintiff did not point to any evidence illustrating that his glaucoma is "severe." Instead, Plaintiff argues the ALJ erred because he incorrectly stated that Plaintiff "underwent successful surgery for his glaucoma."[27] Commissioner agrees that the ALJ was mistaken and that the surgery cited by the ALJ was actually for Plaintiff's carpal tunnel syndrome.[28] However, this error is harmless because a different result would not have occurred absent the error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error standard in Social Security case)); *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) (holding that to establish an error warranting remand, a plaintiff bears the burden of demonstrating that it is possible that a different result would occur absent the error).

At step two, Plaintiff bears the burden of showing that he has a severe impairment. *Wade v. Saul*, No. CV H-18-2229, 2019 WL 4601927, at *4 (S.D. Tex. Sept. 20, 2019). Not only has Plaintiff not pointed to any evidence to illustrate how his glaucoma is a severe impairment, but the ALJ's finding is also supported by the objective medical evidence in the record. Therefore, the

---

[24] Dkt. No. 10-7 at 78.
[25] Dkt. No. 10-25 at 4–5, 16–17.
[26] Dkt. No. 10-3 at 61, 67–68; Dkt. No. 10-7 at 26.
[27] Dkt. No. 12 at 4.
[28] Dkt. No. 14 at 5.

Court recommends that the ALJ did not err in finding Plaintiff's glaucoma as nonsevere.

<em>ii. Carpal Tunnel Syndrome</em>

As to Plaintiff's carpal tunnel syndrome, the ALJ's nonseverity finding is also supported by substantial evidence. Plaintiff's condition was characterized as "mild" and Plaintiff reported no problem using his hands.[29] After complaining about wrist pain that worsened when he did yard work, Plaintiff was diagnosed with bilateral carpal tunnel syndrome.[30] Plaintiff was advised to wear wrist splints at night and do occupational therapy.[31] In April 2018, Plaintiff underwent a successful surgery on his right wrist and was scheduled to have the same surgery on his left wrist.[32]

Plaintiff's argument centers on his surgeries and argues that the ALJ erred by considering Plaintiff's upcoming surgery on his left wrist.[33] Plaintiff further argues that he still complained of tingling and numbness in his right hand after his surgery and that the evidence shows his carpal tunnel syndrome is more than a slight abnormality.[34] Plaintiff reasons that "[i]f the carpal tunnel syndrome was a mere 'slight abnormality,' surgeries would not have been discussed or scheduled[,]" but provides no case law to support such a contention.

The question before the Court is whether substantial evidence supports the ALJ's findings. Here, the amount of evidence supporting the ALJ's decision is far "more than a mere scintilla." *Hardman*, 820 F.3d at 147. As such, the Court recommends that substantial evidence supports the ALJ's decision that Plaintiff's carpal tunnel syndrome is nonsevere.

---

[29] Dkt. No. 10-25 at 68; Dkt. No. 10-29 at 10.
[30] *See* Dkt. No. 10-24 at 109–11.
[31] Dkt. No. 10-26 at 56.
[32] Dkt. No. 10-27 at 56–57; Dkt. No. 10-3 at 17.
[33] Dkt. No. 12 at 4.
[34] *Id.* at 5.

**b.  The ALJ's RFC Determination Does Not Conflict With His Step Three Findings.**

Plaintiff argues the ALJ's RFC assessment is inconsistent with the finding that Plaintiff has moderate difficulties with concentrating, persisting, or maintaining pace.[35] Commissioner contends the ALJ's RFC determination is not inherently contradictory to the ALJ's findings at step three.[36] The Court agrees with Commissioner.

At step two of his analysis, the ALJ considered Plaintiff's mental impairments and found he had a moderate limitation[37] with concentrating, persisting, or maintaining pace.[38] Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). Later, during the ALJ's RFC determination, he found Plaintiff could understand detailed instructions and concentrate on detailed tasks.[39] Plaintiff provides no legal support for his argument that these two findings are inconsistent and, in fact, the case law suggests the opposite. *See Zuniga v. Colvin*, No. 2:17-CV-35, 2017 WL 7411229, at *8 (S.D. Tex. Dec. 18, 2017) ("An ALJ need not include in the RFC the specific words 'moderate difficulties in the area of concentration, persistence, or pace' where, as here, the decision shows the ALJ considered those limitations in reaching the RFC determination"), report and recommendation adopted, No. 2:17-CV-35, 2018 WL 791377 (S.D. Tex. Feb. 6, 2018); *Westover v. Astrue*, No. 4:11-CV-816-Y, 2012 WL 6553102, at *9 (N.D. Tex. Nov. 16, 2012),

---

[35] Dkt. No. 12 at 5–6.

[36] Dkt. No. 14 at 6–8.

[37] A moderation limitation means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c).

[38] Dkt. No. 10-3 at 19.

[39] *Id.* at 20.

(holding that substantial evidence supported the ALJ's RFC determination that limited a plaintiff "to only performing work that involved detailed instructions," despite his moderate limitation in maintaining concentration, persistence, or pace, where the ALJ made that determination "based upon [his] evaluation of the evidence"), report and recommendation adopted, No. 4:11-CV-816-Y, 2012 WL 6553829 (N.D. Tex. Dec. 13, 2012).

In his RFC determination, the ALJ thoroughly summarized and analyzed Plaintiff's subjective complaints and the objective medical evidence regarding Plaintiff's mental impairments, even noting that Plaintiff's continued ability to drive indicates "significant concentration ability."[40] This suggests to the Court that the ALJ did consider Plaintiff's limitations in reaching the RFC determination. *See Zuniga*, 2017 WL 7411229, at *8.

Further, even if Plaintiff is correct that the RFC failed to properly incorporate such limitations, he failed to establish prejudice. *See Downing v. Astrue*, No. 2:11–CV–0170, 2012 WL 4354928, at *5 (N.D. Tex. Sept. 7, 2012), report and recommendation adopted, No. 2:11–CV–0170, 2012 WL 4354915 (N.D. Tex. Sept. 24, 2012) (plaintiff did not prove ALJ committed error where plaintiff did not indicate how she was harmed by ALJ's failure to include those specific terms in RFC). Plaintiff has not shown how the inclusion of additional limitations regarding his concentration, persistence, and pace in the RFC would have eliminated any of the jobs identified by the VE.[41] *See Smith v. Colvin*, No. 313–CV–1884, 2014 WL 1407437, at *4 (N.D. Tex. Mar.

---

[40] *Id.* at 20–24.

[41] Plaintiff notes that his limitations should have been considered by a VE in determining whether there is other work in the national economy that he can perform. (Dkt. No. 12 at 6.) Commissioner contends that the ALJ correctly included only the reasonably recognized limitations in his hypothetical question to the VE. (Dkt. No. 14 at 6–8.) The limitations recognized by the ALJ in his decision were reasonably incorporated into the hypothetical posed to the VE. *See Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2015) (holding that because the "ALJ's question here

24, 2014), report and recommendation adopted, No. 3:13–CV–1884, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014).

Accordingly, the Court recommends that the ALJ did not err by finding Plaintiff had the RFC to perform light work despite his moderate difficulties with concentrating, persisting, or maintaining pace.

### c. The ALJ Did Not Err By Not Providing RFC Limitations For Weather And Climate Exposure.

Plaintiff argues the ALJ erred by not setting limitations for weather and climate exposure.[42] Commissioner contends Plaintiff never mentioned issues relating to weather or climate in his benefit applications and, further, such limitations are not supported by the objective medical records.[43] The Court agrees with Commissioner.

Plaintiff cites to two occasions to illustrate his need for weather and climate exposure limitations: (1) in June 2015, Plaintiff told a physician that his pain increased when it rained;[44] and (2) in January 2018, Plaintiff told his mental health counselor that cold weather contributed to his joint pain.[45] Commissioner argues that Plaintiff neither mentioned issues related to weather and climate in his benefit applications nor in his hearing testimony, and that Plaintiff can only cite two

---

tracked his residual functional capacity assessment," and the RFC assessment was supported by substantial evidence, the ALJ's hypothetical properly accounted for the claimant's impairments). Thus, because the ALJ's RFC is supported by substantial evidence, the Court recommends that there is no err regarding the ALJ's hypothetical to the VE.

[42] Dkt. No. 12 at 6.
[43] Dkt. No. 14 at 8–9.
[44] Dkt. No. 10-8 at 61.
[45] Dkt. No. 10-17 at 28.

instances in over 1,800 pages of evidence to support his argument.[46]

Two complaints of weather and climate exposure does not provide sufficient evidence showing the alleged impairment affected his ability to work such that Plaintiff would need additional RFC limitations. *See, e.g.*, *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) ("isolated comments" about claimant's intellectual functioning, viewed within whole record, were insufficient to raise suspicion of mental retardation); *Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged impairment precluded employment). Further, Plaintiff fails to identify how such a limitation would eliminate any of the jobs identified by the VE as the three jobs—case aide, companion, and nursery attendant—are all inside jobs. *See Smith*, 2014 WL 1407437, at *4.

Thus, the Court recommends that the ALJ did not err by not providing RFC limitations for weather and climate exposure.

### d.  The ALJ Correctly Considered And Weighted The Evidence.

Plaintiff argues the ALJ erred by not considering all required factors when assigning weight to medical opinions and erred in affording more weight to nontreating opinions.[47] Commissioner contends the ALJ properly assessed Plaintiff's RFC in accordance with the pertinent regulations and Social Security Rulings by considering all the medical evidence.[48]

>        i.        *Dr. Huiping Xu, M.D.*

Plaintiff argues that the ALJ erred by assigning little weight to treating physician Dr. Huiping Xu's ("Dr. Xu") opinion and by failing to provide an adequate explanation as to his

---

[46] *See* Dkt. No. 14 at 8–9.
[47] Dkt. No. 12 at 7.
[48] Dkt. No. 14 at 9.

decision.[49] Commissioner contends that the ALJ properly assigned little weight to the treating physician and provided his reasoning.[50] The Court agrees with Commissioner.

A treating physician's opinion on the nature and severity of a plaintiff's impairment should be accorded "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Brown v. Astrue*, 344 F. App'x 16, 20 (5th Cir. 2009). "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (quoting *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994)). The good cause exceptions to the treating physician rule allow an ALJ to "disregard [ ] statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.*

Importantly, "[c]ontrolling weight may be given only . . . to medical opinions." *See Kim Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at *9 (S.D. Tex. Jan. 14, 2015); *see also* 20 C.F.R. § 404.1527(a)(2) (definition of a medical opinion). "Opinions on some issues . . . are not medical opinions." 20 C.F.R. § 404.1527(d). Rather, they are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Id.* Accordingly, a physician's statement of disability, opinion on a plaintiff's ability to work, or RFC assessment are not entitled to any "special significance" as they are not "medical opinions." *See* 20 C.F.R. § 404.1527(d); 20 C.F.R. § 404.1545(a)(1) (definition of

---

[49] Dkt. No. 12 at 8.
[50] *See* Dkt. No. 14 at 9–10.

14 / 21

RFC); *Frank*, 326 F.3d at 620.

Here, Dr. Xu submitted a letter that stated Plaintiff "can not function in a work setting in any capacity" due to the severity of his pain and depression.[51] As the ALJ correctly noted, this opinion is an issue reserved to the Commissioner.[52] *See* 20 C.F.R. § 404.1527(d). Thus, Plaintiff's argument that the ALJ erred by not addressing the § 404.1527(c) factors when affording Du. Xu's opinion little weight is unpersuasive.

When rejecting or giving little weight to a treating physician's opinion, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [20 C.F.R. § 404.1527(c)(2) ]."[5] *Newton*, 209 F.3d at 453 (emphasis in original). "The plain implication of that statement is that where there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in [§ 404.1527(c)(2) ] is unnecessary." *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012).

Any diagnosis of disability is not a "medical opinion" entitled to any special significance. Accordingly, an analysis of Dr. Xu's disability opinion using the § 404.1527(c) factors was unnecessary. *See Frank*, 326 F.3d at 620 ("The factors set out at subsection [(c)] apply only to medical opinions, not opinions 'reserved to the Commissioner.'"). Moreover, in discounting Dr. Xu's disability opinion, the ALJ relied upon the objective medical evidence, where, as Commissioner notes, progress notes consistently reflected relatively normal mental status

---

[51] Dkt. No. 10-20 at 58.
[52] Dkt. No. 10-3 at 23.

examinations.[53] *See Meyer v. Barnhart*, 163 F. App'x 347, 348 (5th Cir. 2006) (distinguishing *Newton*); *Zimmerman v. Astrue*, 288 F. App'x 931, 935–36 (5th Cir. 2008) (same); *Rollins*, 464 F. App'x at 358 ("[T]he ALJ's recognition that [the treating physician's] opinion was inconsistent with objective medical findings, other doctors' opinions, and the record as a whole satisfies [§ 404.1527(c)'s] requirement 'always [to] give good reasons . . . for the weight we give your treating source's opinion.'").

The ALJ must decide what weight to give the proffered medical evidence. *See Menchaca v. Barnhart*, 179 F. App'x 215, 216 (5th Cir. 2006). Because Dr. Xu's disability opinion was an issue reserved to the Commissioner, the Court recommends that the ALJ did not err in assigning little weight to Dr. Xu's opinion.

> ii.     *Dr. Anibal Rossel, M.D.*

Similar to above, Plaintiff argues that the ALJ erred by assigning partial weight to treating physician Dr. Anibal Rossel's ("Dr. Rossel") opinion and by failing to provide an adequate explanation as to his decision.[54] Commissioner contends the ALJ did discuss the relevant regulatory factors and properly considered the medical evidence.[55] The Court agrees with Commissioner.

Plaintiff lodges multiple complaints as to the ALJ's explanation, but, in summary, argues he failed to consider all the factors required in 20 C.F.R. § 404.1527(c).[56] While the ALJ does not

---

[53] *See* Dkt. No. 10-20 at 61; Dkt. No. 10-21 at 10; Dkt. No. 10-22 at 24; Dkt. No. 10-25 at 97, 104.

[54] Dkt. No. 12 at 9.

[55] Dkt. No. 14 at 11.

[56] Dkt. No. 12 at 9–12. 20 C.F.R. § 404.1527(c)(2) requires consideration of: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion

have to specifically identify each individual factor in their decision, it does need to be clear from the record that the factors were considered. *See Jones v. Colvin*, 638 F. App'x 300, 305 (5th Cir. 2016). Here, the ALJ considered the 20 C.F.R. § 404.1527(c)(2) factors in reviewing Dr. Rossel's opinion and did not err in assigning it partial weight.

Specifically, the ALJ considered the "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, [and] (3) the nature and extent of the treatment relationship," by reviewing the details and recommendations from an April 2018 Questionnaire and a May 2018 Questionnaire.[57] The ALJ also noted Dr. Rossel's lengthy history with Plaintiff.[58] The record shows that the ALJ considered "(4) the support of the physician's opinion afforded by the medical evidence of record [and] (5) the consistency of the opinion with the record as a whole" by specifically noting when Dr. Rossel's findings were consistent or inconsistent with other medical evidence and the ALJ's own RFC assessment.[59] Finally, the ALJ considered "(6) the specialization of the treating physician" by noting the assessment and limitations recommendation by Dr. Rossel.[60] *See generally Jones*, 638 F. App'x at 305.

However, even assuming that the ALJ erred in failing to give Dr. Rossel's opinion controlling weight, the error was harmless and Plaintiff has not shown prejudice from it. *See Taylor*, 706 F.3d at 603 (applying harmless error analysis to a different type of ALJ error); *Singleton v. Colvin*, No. 3:12-CV-00821, 2013 WL 1562867, at *12 (N.D. Tex. Apr. 15, 2013)

---

afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

[57] *See* Dkt. No. 10-3 at 23–24.

[58] *Id.* at 23.

[59] *Id.* at 23–24.

[60] *Id.*

(applying harmless error analysis to similar error). Here, the ALJ made clear that his recommendation often overlapped with the recommendations provided by Dr. Rossel and Plaintiff provides no reasoning on how a greater weight would have changed the ultimate outcome. Instead, Plaintiff refers to the ALJ's findings as "asinine," unacceptable, and at times suggests that the ALJ should have presumed certain advice was given to Plaintiff despite there being no record of it— none of which pinpoints how Plaintiff was prejudiced.[61] Thus, the Court recommends that the ALJ did not err in his consideration and weighing of Dr. Rossel's opinion.

### iii.    State Agency Medical Consultants

Plaintiff argues that the ALJ erred by assigning great weight to the State agency medical consultants' assessments and by failing to provide an adequate explanation as to his decision.[62] Commissioner contends the assessments were properly considered.[63] The Court agrees with Commissioner.

The regulations explain that State agency medical consultants "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513(b)(1). Thus, the ALJ gave their findings that Plaintiff could function at a light exertional level great weight. Plaintiff argues the ALJ's explanation was inadequate, but the ALJ addressed the qualifications of the consultants

---

[61] *See* Dkt. No. 12 at 10–11. In his response to Commissioner's Motion for Summary Judgment, Plaintiff also argues that the ALJ failed to explain why he ignored Dr. Rossel's standing/walking restriction. (Dkt. No. 15 at 3.) Because the ALJ addressed Plaintiff's alleged restrictions, this argument is without merit. (*See* Dkt. No. 10-3 at 23 ("[T]here are no consistent findings to indicate difficulty sitting for period longer than 1/3 of an 8 hour day."); *see also id.* at 24 ("[T]here is no indication that the claimant was unable to bend or that he required a change in body position or posture ever[y] hour. . . . Nevertheless, the above [RFC] finding essentially allows for a change in posture/position.").)

[62] Dkt. No. 12 at 12–14.

[63] Dkt. No. 14 at 11–12.

and also identified areas where the assessments were deficient.[64] Further, Plaintiff failed to provide

any legal support for his complaints. Thus, the Court recommends that the ALJ did not err in his

consideration and weighing of the State agency medical consultants' assessments.

iv.    *August 2016 Consultative Exam*

Finally, Plaintiff argues the ALJ failed to assign a weight to a consultative exam and failed

to consider the exam in light of a statement provided by Plaintiff.[65] Commissioner contends the

examination was considered and, as a nontreating source, the ALJ was not required to assign it a

weight.[66]

The ALJ's RFC determination is based on the record as a whole. *See Ong v. Saul*, No. 4:18-

CV-3577, 2020 WL 164559, at *4 (S.D. Tex. Jan. 13, 2020); *Gray v. Astrue*, No. 1:09-CV-0101,

2011 WL 856941, at *5 (N.D. Tex. Mar. 11, 2011) ("The RFC assessment is based upon *all* of the

relevant evidence in the case record, including, but not limited to, medical history, medical signs,

and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence,

recorded observations, medical source statements, and work evaluations."). As part of his RFC

determination, the ALJ restated the findings of the August 2016 consultative exam in detail.[67]

Thus, Plaintiff's argument that the ALJ did not consider the August 2016 consultative exam is

without merit. Further, Plaintiff's argument that the ALJ erred by failing to specifically address

Plaintiff's concerns regarding the August 2016 consultative exam is equally without merit.[68]

"[T]he ALJ is not always required to do an exhaustive point-by-point discussion" of each piece of

---

[64] Dkt. No. 10-3 at 24.
[65] Dkt. No. 12 at 14.
[66] Dkt. No. 14 at 12–13.
[67] Dkt. No. 10-3 at 21.
[68] *See* Dkt. No. 15 at 4–5.

evidence at every step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *see Charland v. Astrue*, No. 08-CV 1072, 2010 WL 624047, at *3 (N.D. Tex. Feb. 22, 2010) ("The ALJ is not statutorily or judicially obligated to explicitly list all the evidence he or she takes into account[.]"). In fact, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005).

Finally, any error by the ALJ in not explicitly assigning a weight to the August 2016 consultative exam is harmless.[69] *Morris*, 864 F.2d at 334 (finding harmless error when substantial evidence in the record supports the ALJ's decision); *Hammond*, 124 F. App'x at 851–52 (finding the ALJ's failure to articulate the weight given to the opinions of two state agency psychological consultants was harmless error). The Court recommends that its review of the record reveals the existence of substantial evidence supporting the ALJ's decision.

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and the action be **DISMISSED** with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

---

[69] Plaintiff's August 2016 consultative exam showed no evidence of pathological curvatures, spasm, or misalignment. (Dkt. No. 10-3 at 21.) Plaintiff's extremities were normal and he was found to be neurologically intact, including gait and grip strength. (*Id.*) The ALJ noted the straight leg raise testing was positive in the supine position and that Plaintiff was able to bend over 75 degrees, and walk on toes and heels, but he was unable to squat. (*Id.*)

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on January 27, 2021.

Sam S. Sheldon
United States Magistrate Judge